UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LEON A. POINDEXTER, d/b/a SEAPORT VESSELS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| TALL SHIPS PROVIDENCE FOUNDATION, | ) ) ) ) |
| Defendant. | ) ) |

**Docket No.**

_____

## COMPLAINT

NOW COMES Plaintiff, Leon A. Poindexter, doing business as Seaport Vessels, Inc., by and through counsel Thompson Bowie & Hatch LLC, and as for its Complaint against Defendant, Tall Ships Providence Foundation, alleges as follows:

## PARTIES

1. Plaintiff Leon A. Poindexter, doing business as Seaport Vessels, Inc. ("Seaport Vessels"), is a corporation incorporated in Florida with a principal place of business in Rockport, Mass., and during all applicable times herewith was lawfully doing business in the State of Maine.

2. Defendant Tall Ships Providence Foundation, Inc. ("TSPF"), is a corporation incorporated in Virginia with a principal place of business in Alexandria, Va., and owner of the *S/V Providence,* a 110-foot (length overall) fiberglass-hulled, Colonial-era replica vessel ("Vessel").

1

## JURISDICTION AND VENUE

3. This is a case brought pursuant to the admiralty or maritime jurisdiction of the United States of America within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and pursuant to 28 U.S.C. §1332 (diversity) in that neither plaintiff nor defendant are residents of the same state and the amount in controversy is over $75,000.

4. Jurisdiction and venue exists over this matter in the District of Maine because all of the material facts and events occurred in Wiscasset and Phippsburg, Maine, where the contract between Plaintiff and Defendant was performed on the subject Vessel, which was refurbished and repaired by Plaintiff and its subcontractors between September 25, 2018, and June 19, 2019.

5. With the exception of Leon Poindexter, President of Seaport Vessels, Inc., and two specialty workers (James Berry and his three-person crew and Matthew Homel), all of the remaining witnesses and repair workers who performed work on the Vessel during the subject period are residents of the State of Maine.

6. The Vessel departed the District of Maine on June 19, 2019, and now lies in the Potomac River at or near Alexandria, Va., or Washington, D.C.

## FACTS

7. Plaintiff Seaport Vessels, through its president Leon Poindexter, has performed extensive repairs and historically-accurate reconstructions on historic and replica vessels for approximately 40 years, including on some of the most significant historic vessels in the United States, USS *Constitution*, HMS *Rose* (also called HMS *Surprise*), *Ernestina*, *Western Union*, *Harvey Gamage*, *Spirit of Massachusetts*, HMS *Bounty*, *Roseway*, *Luna*, Battleship USS *Massachusetts*, *Mimi*, PT Boat *796*, Boston Tea Party ships *Beaver* and *Eleanor, Oliver Hazard Perry*, *Kalmar Nyckel*, *A.J. Meerwald*, *Lettie G. Howard*, *Pilot*, and *Westward*.

8. Seaport Vessels provides a range of services for restoration and new vessel construction from research and design to the finished hull and rigging, including construction drawings, specifications, estimates, site development, materials procurement, hull construction, spar making, rigging and "fitting out" for operation.

9. The subject Vessel was built in 1976 as part of a Bicentennial celebration.

10. On February 4, 2015, the Vessel was being stored on jackstands while ashore in Newport, Rhode Island, when it was knocked over in a winter storm, its hull and rig suffering severe damage.

11. The Vessel had been certified by the United States Coast Guard, with a Stability letter, for the previous owner to carry passengers for hire with a Certificate of Inspection allowing operation with a maximum of 46 passengers and crew on partially protected waters of the United States.

12. The prior Certificate of Inspection expired in 2014.

13. As a result of the accident, the Vessel could not sail with passengers for hire and its Coast Guard Certificate of Inspection and Stability Letter lapsed.

14. In or about September 2017, TSPF purchased the Vessel with the intention of restoring it for use as a historic reenactment vessel with passengers for hire.

15. In early August, 2017, Defendant TSPF's executive director, Scott Shaw, contacted Mr. Poindexter of Seaport Vessels to request assistance in repairing the Vessel.

16. Mr. Shaw and Mr. Poindexter spoke on August 9, 2017, during which they discussed bringing the Vessel for hull repairs in Gloucester, Mass., and then finishing the project in Maine where Mr. Poindexter's crew and the majority of his subcontractors were located.

17. Mr. Poindexter confirmed that Seaport Vessels and its subcontractors had the requisite skills to perform repairs to the Vessel that would be more historically accurate (within the limits of modern safety requirements) and consistent with requirements of the United States Coast Guard.

18. The parties agreed that the contract for repairs as between Seaport Vessels and TSPF would be based upon a "time and materials" basis and that there would be no "mark-up" of materials.

19. No assurances were asked, and none was given, regarding a proposed schedule of repairs, delivery date, outcomes of Coast Guard review and inspections for Certificates of Inspection or Stability letters.

20. Nonetheless, the parties agreed to proceed in good faith given the proven track record of Seaport Vessels in repairing historically-accurate, safe, and operational vessels.

21. Accounting and payment was agreed between the parties to be performed as follows: TSPF would pay into Seaport Vessel's operating account in periodic, advance installment payments as needed, and Seaport Vessels would draw from the account based upon the work performed by Seaport Vessels and its subcontractors.

22. Seaport Vessels and its subcontractors repaired the Vessel's breached hull at Gloucester Marine Railways Corp., Gloucester, Mass., between October 2017 through September 15, 2018.

23. Under the direction of Mr. Shaw of TSPF, the accounting and payment method proceeded without disruption as work on the Vessel by Seaport Vessels and its subcontractors progressed.

24. On or about July 9, 2018, TSPF installed Clair Sassin as executive director, replacing Mr. Shaw as the point-person as between TSPF and Seaport Vessels.

25. The Vessel was then delivered to Wiscasset, Maine, on or about September 25, 2018, and work by Seaport Vessels and its subcontractors as to the lion's share of the restoration and repair of the Vessel began immediately.

26. Once the Vessel arrived in Maine, Ms. Sassin soon began to make demands upon Seaport Vessels as to its scope of work, by telephone, emails, and visits to Mr. Poindexter in Maine.

27. Ms. Sassin also unilaterally imposed new payment terms and, instead of paying in advance into Seaport Vessels' account, stopped making advance payments.

28. Ms. Sassin refused to pay Seaport Vessels' outstanding invoices in full, and TSPF began to fall behind in its obligations to Seaport Vessels.

29. Ms. Sassin also unilaterally expanded the scope of work, including, but not limited to, adding demands for guns and carriages, air conditioning, bunks, cushions, and deck boxes.

30. Ms. Sassin's demands, payment changes, and proposed additions to the scope of work were in conflict with the previous agreement as between Seaport Vessels and TSPF.

31. Work on the Vessel was delayed by foul weather during the spring of 2019.

32. Work on the Vessel was delayed as a result of the demands and changes proposed by Ms. Sassin on behalf of TSPF.

33. Notwithstanding the changes proposed by Ms. Sassin on behalf of TSPF, Seaport Vessels made every effort to continue work on the Vessel.

34. However, since TSPF had become so far in arrears in payments, Seaport Vessels had to stop payment to itself and its subcontractors and suppliers.

35. Certain key contractors quit the job based upon the failure of TSPF to pay Seaport Vessels.

36. Seaport Vessels was unable to complete the Vessel's wiring as originally requested, yet still completed the remainder of the work originally requested and much of the additional work demanded by Ms. Sassin.

37. Ms. Sassin also demanded that Seaport Vessels employ a haphazard schedule of skilled and unskilled laborers and volunteers to take the place of the skilled workers who had quit over the failure of TSPF to pay Seaport Vessels for outstanding work.

38. All of the work performed by Seaport Vessels was workmanlike and consistent with the standards of the industry for historic vessels with modern safety requirements.

39. Seaport Vessels only charged TSPF for work that it completed.

40. TSPF removed the Vessel from Wiscasset on or about June 19, 2019, notwithstanding its failure to pay Seaport Vessels for its outstanding work.

41. Seaport Vessels has demanded payment of its unpaid invoices in the amount of $228,401.14, which amount constitutes a maritime lien against the Vessel for necessaries pursuant to 46 U.S.C. § 31342 for which TSPF as owner is liable.

42. TSPF has routinely refused payment, notwithstanding Seaport Vessels' repeated demands.

43. TSPF falsely claimed that Seaport Vessels' work was inferior.

44. Seaport Vessels filed a Notice of Claim of Lien with the United States Coast Guard National Vessel Documentation Office on April 22, 2020, in the amount of $228,401.14.

45. In April 2021, TSPF partially paid Seaport Vessels an amount of $70,842.00.

46. The difference between the amount earned by Seaport Vessels ($228,401.14) and paid by TSPF ($70,842.00) is $157,559.14, plus interest, and remains unpaid.

47. To date, TSPF has refused payment as to the remaining amounts owed for the work performed by Seaport Vessels.

48. Notwithstanding TSPF's refusal to pay the balance owed Plaintiff, TSPF boasts on its web site of Plaintiff's work restoring the Vessel, through photos and text, in which it states, in part: "The restoration work on the ship, from the initial plan through the final touches, was accomplished under the expert guidance of Master Shipwright Leon Poindexter."

## COUNT 1
### Breach of Maritime Contract

49. Seaport Vessels repeats and realleges paragraphs 1 - 48 above as if fully restated herein.

50. A valid maritime contract existed as between Plaintiff Seaport Vessels and Defendant TSPF as owner of the Vessel.

51. Seaport Vessels fulfilled its obligations under the contract in all respects by performing work on the Vessel consistent with the standards in the industry.

52. Defendant TSPF breached the contract for its failure to pay Seaport Vessels for the work performed on the Vessel.

53. Seaport Vessel has suffered damages as a result of TSPF's breach of contract.

WHEREFORE, for the foregoing reasons, Seaport Vessels respectfully demands judgment in its favor and against TSPF for its damages, interest, costs, and attorney fees and such other and further relief this Court deems just and proper.

## COUNT 2
### *Quantum Meruit*

54. Seaport Vessels repeats and realleges paragraphs 1 - 53 above as if fully restated herein.

55. Seaport Vessels performed services and rendered certain benefits upon Defendant TSPF.

56. The services were rendered and the benefits conferred with the knowledge and consent of Defendant TSPF under circumstances which would make it reasonable for Plaintiff Seaport Vessels to expect payment for the services.

57. Defendant TSPF has failed to pay Plaintiff Seaport Vessels for the services and benefits despite demand for payment by Seaport Vessels.

WHEREFORE, for the foregoing reasons, Seaport Vessels respectfully demands judgment in its favor and against TSPF damages, interest, costs, and attorney fees and such other and further relief this Court deems just and proper.

## COUNT 3
## Unjust Enrichment

58. Seaport Vessels repeats and realleges paragraphs 1 - 57 above as if fully restated herein.

59. Plaintiff Seaport Vessels performed services and rendered certain benefits upon Defendant TSPF.

60. Defendant TSPF had knowledge of the services and benefits rendered and conferred upon it by Plaintiff Seaport Vessels.

61. Defendant TSPF's acceptance and retention of the services and benefits conferred by Plaintiff Seaport Vessels without payment would be unjust and inequitable under the circumstances.

WHEREFORE, for the foregoing reasons Plaintiff Seaport Vessels respectfully demands judgment in its favor and against TSPF for its damages, interest, costs, and attorney fees and such other and further relief this Court deems just and proper.

DATED at Portland, Maine, this 2nd day of July, 2021.

**Plaintiff Leon A. Poindexter,
d/b/a Seaport Vessels, Inc.**
By Its Attorneys,

*/s/ Twain Braden*
Twain Braden, Esq.

*/s/ Benjamin J. Wahrer*
Benjamin J. Wahrer, Esq.

**THOMPSON BOWIE & HATCH, LLC**
415 Congress St.; P.O. Box 4630
Portland, Maine 04112-4630
(207) 774-2500
tbraden@thompsonbowie.com
bwahrer@thompsonbowie.com